UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jesse Perez Jr., | No.  1:25-cv-00305-JLT-GSA |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO DENY THE COMMISSIONER'S REQUEST TO AFFIRM, AND TO REMAND THIS MATTER TO THE COMMISSIONER OF SOCIAL SECURITY UNDER SENTENCE FOUR OF 43 U.S.C. § 405(G)** |
| v. | |
| Commissioner of Social Security, | |
| Defendants. | |
| | (ECF No. 13, 16) |

## I.    Introduction

On March 12, 2025, Plaintiff Jesse Perez Jr. filed a complaint in this Court seeking judicial review of a final decision of the Commissioner of Social Security denying his application for Social Security Disability Insurance Benefits (SSDI) pursuant to Title II of the Social Security Act.

## II.    Procedural Background

On August 31, 2022, Plaintiff applied for SSDI alleging a disability onset date of September 14, 2021.  The claim was denied initially on January 25, 2023, and upon reconsideration on April 28, 2023.

On April 19, 2024, the ALJ held a telephone hearing.  AR 39–74.  The ALJ issued an unfavorable decision on May 22, 2024.  AR 18–34.  The Appeals Council declined review on September 9, 2024.  AR 5–10.  Plaintiff then filed a complaint in this Court on March 12, 2025

1

seeking judicial review of the Commissioner's final decision under 42 U.S.C. §§ 405(g), 1383(c)(3).

### III.   The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.   "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).   Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).   It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).   If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).   "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for a continuous period of not less than twelve months.   42 U.S.C. § 1382c(a)(3)(A).   An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

2

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

### IV.    <u>The ALJ's Decision</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 14, 2021, the alleged onset date. AR 23. At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease status-post laminectomy and fusion at L5-S1, neuropathy in the lower extremities, and obesity. AR 24.

At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 24.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 404.1567(b) and 416.967(b) with the following additional limitations:

> He can stand and walk for 4 hours in an 8-hour workday. He can occasionally climb ladders, ropes, scaffolds, ramps, and stairs. He can occasionally balance, stoop,

3

crouch, crawl, and kneel. He should avoid exposure to extreme cold or extreme damp environments. He should avoid more than occasional exposure to workplace hazards, such as moving machinery and unprotected heights.

AR 24.

At step four, the ALJ determined that Plaintiff was incapable of performing his past relevant work as a marker and "peddler/vender". AR 28. At step five, in reliance on the Vocational Expert's (VE) testimony, the ALJ found Plaintiff was able to perform jobs existing in significant numbers in the national economy, namely: cashier II, outside deliverer, and sub-assembler. AR 29–30.

Accordingly, the ALJ found that Plaintiff was not disabled under the Act at any time since his alleged disability onset date of September 14, 2021. AR 30.

## V.   Issues Presented

Plaintiff asserts one claim of error: "The RFC is not supported by substantial evidence because [the] ALJ harmfully errs by failing to provide clear and convincing reasons to reject Mr. Perez's severe pain symptomology that lasted at least 12 months with no improvement." MSJ at 2, ECF No. 13.

### A.   Subjective Complaints

#### 1.   Applicable Law

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p

at *10.  Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

As the Ninth Circuit recently clarified in *Ferguson*, although an ALJ may use "*inconsistent* objective medical evidence in the record to discount subjective symptom testimony," the ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (emphasis in original).

In addition to the objective evidence, the other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any medication; 5- treatment other than medication; 6- other measures the claimant uses to relieve pain or other symptom;  and 7- other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

## 2.    Analysis

Plaintiff provides 12 pages of detailed factual discussion of his subjective complaints and the objective evidence in support of the notion that Plaintiff is incapable of performing the demands of a reduced range of light work as specified in the RFC.  Plaintiff further argues that the Court should accept his allegations of a less than sedentary exertional capacity as true, or at a minimum remand for additional proceedings.  MSJ at 2–13.

Defendant by contrast provides roughly 3.5 pages of analysis consisting mostly of legal standards and quotations of applicable law.  See Resp. at 3–7.

Given the parties' divergent approaches, it seems that the most useful analytical framework in which to address this case is to proceed paragraph by paragraph through the ALJ's brief 4-page RFC discussion and analyze it while at the same time incorporating the parties' arguments when necessary and appropriate.

### a.    Summary of Subjective evidence

The ALJ summarized Plaintiff's testimony as follows:

> The claimant alleges that he has significant limitations in walking, standing, and sitting. He alleges he cannot lift more than 1 to 2 pounds. He also needs to rest. (Testimony). He has reported that he is limited due to pain in his back and his feet going numb. He reported he can lift no more than a gallon of milk. He was able to a grocery shop twice month and drive around 32 miles. (Ex. 5E). At the February 2024 hearing, he reported he completed a 6-month program for phlebotomy from January 2023 to June or July 2023. The classes were 2 days per week, 1 day from home and 1 day in person. The classes were 2-3 hours long and had a 15-minute break. He began working in December 2023, as a phlebotomist, 4 hours a day, 5 days a week. He testified that after work, he would return home and lay down for hours. (Testimony).

AR 25 (emphasis added); AR 39–74 (hearing transcript); AR 265–67, Ex. 5E, (Exertion Questionnaire).

### b.    Daily Activities

To begin, the ALJ's observation that Plaintiff grocery shops twice a month, although true, leaves out additional important testimony that Plaintiff grocery shops with his wife, that he has difficulty reaching above chest level, and that he must hold onto the cart (ostensibly for stability). See AR 57 ("Every time we go to the store, I have to be on the cart holding myself with my wife.").

Next, according to the ALJ, Plaintiff alleged that he cannot lift more than 1 to 2 pounds. AR 25.  However, in response to the ALJ's question about the exertional demands of Plaintiff's phlebotomist job, Plaintiff stated that this job required lifting no more than 1 to 2 pounds. AR 49. Plaintiff did not say that this was all he could lift.  AR 49.  The ALJ then cites the Exertion Questionnaire for the proposition that Plaintiff could lift no more than a gallon of milk.  Ex. 5E (Exertion Questionnaire; AR 265–67).  Specifically, the form in fact asked "What kind of things can you carry" to which Plaintiff responded that he could carry a gallon of milk.  AR 266.

As to daily activities, Defendant emphasizes that Plaintiff was already working four hours per day, five days per week as a phlebotomist during the period in issue. AR 23, 47.  Although the ALJ determined at step 1 that this part-time work did not meet the threshold for substantial gainful activity, Defendant nevertheless argues that even part-time work can support the conclusion that a claimant is able to do more than he alleges. 20 C.F.R. § 404.1571.  However, even though this is

an accurate statement of law under the cited regulation, the ALJ did not find that the phlebotomist job supports the notion that Plaintiff can do more than he alleges and noted that the Plaintiff testified that he had to lay down for hours following work.

### c.   Improvement with Surgery

It should be noted here at the outset that Plaintiff testified that surgery worsened his condition.  AR 65.

The ALJ explains:

As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the objective medical evidence shows that the claimant's lumbar impairment, and radiculopathy improved after the September 2021 surgery. Further, the opinion of the consultative examiner and the Prior Administrative Medical Findings ("PAMF") do not support his allegations of significant limitations that limit him to less than sedentary and less than full time work.

AR 25 (emphasis added)

From this explanation, improvement after surgery is apparently the primary basis for the ALJ's RFC, while conversely it is the alleged lack of improvement that is the primary basis for Plaintiff's appeal.

The ALJ continues:

The claimant has degenerative disc disease of the lumbar spine. The claimant underwent a L4-S1 laminectomy and fusion in September 2021. (Ex. 1F/6). Prior to the surgery, an electrodiagnostic studies of both lower limbs in December 2020, revealed a mild left L5 motor radiculopathy, left S1 radiculitis, and underlying polyneuropathy affecting both motor and sensory components, both demyelinating and axonal loss in nature. (Ex. 10F/139).
Following the September 2021 lumbar surgery, the claimant's lumbar and lower extremities' signs and laboratory findings revealed improvement. The March 2022 MRI of the lumbar spine revealed anterolisthesis of L4 over L5. There was L2-L3 mild facet hypertrophy. There was L3- L4 mild loss of disc signal with retrolisthesis and disc bulge with mild facet hypertrophy and focal epidural lipomatosis slightly narrows the canal. There was L4-L5 anterolisthesis. There was anterior fusion with disc space graft, wide decompressive laminectomy, partial facetectomy, foraminotomy and a posterolateral fusion with pedicular screws and stabilizing rods. There was L5-S1 anterior fusion with disc space graft, decompressive laminectomy, facetectomy, foraminotomy and a posterior lateral fusion with pedicular screws and stabilizing rods. There was small left lateral recess protrusion with partial annular fissure versus small epidural cyst possibly secondary

to bone morphogenetic protein ("BMP") or granulation tissue which effaces the left S1 nerve root within the left lateral recess. (Ex. 10F/138-139). A June 2022 EMG showed evidence of neuropathy. (Ex. 8F/1). He underwent a lumbar epidural steroid injection in July 2022. (5F/96).

AR 26

Here, it is not made clear just how the ALJ concluded that following surgery Plaintiff's "lumbar and lower extremities' signs and laboratory findings revealed improvement." Initially, it is of note that the pre-surgical testing discussed above was <u>electrodiagnostic</u> with no MRI discussion, whereas the post-surgical testing was <u>an MRI</u> with no electrodiagnostic discussion. It is important to also note that the pre-surgical electrodiagnostic results used highly technical verbiage like "underlying polyneuropathy affecting both motor and sensory components, both demyelinating and axonal loss in nature." AR 26. The same holds true for the ALJ's post-surgical discussion as many of the recited medical findings, seemingly inserted by the ALJ to demonstrate that Plaintiff had post- surgical improvement, also uses highly technical verbiage. In addition, the post-surgical MRI findings were described as "mild," while most of the electrodiagnostic findings were not accompanied by an adjective indicating severity. Further, because the ALJ's recitation of the medical evidence relating to Plaintiff's post-surgical medical findings relies too heavily on highly technical verbiage unaccompanied by expert interpretation for lay understanding, makes it very difficult to determine exactly how this recitation translates into a showing of post-surgical improvement. For example, the post-surgical clinical finding "fusion with pedicular screws and stabilizing rods," without expert interpretation is not very helpful. Moreover, the ALJ points to no finding from a medical source to support his statement that Plaintiff's surgery revealed improvement, and there is no clear basis upon which to distinguish the severity of the pre-surgery findings from the post-surgery findings.

Further, there are several other records which reflect a lack of improvement post-op, including 1- physical therapy records noted continued radicular pain ranging from 5/10 to 8/10 undermining postural activities, continued positive straight leg raise tests bilaterally, moderate ROM loss in flexion, major ROM loss in extension (AR 660); 2- antalgic gait (AR 723); 3- diagnosis of "failed back surgical syndrome;" (AR 695); and 4- inability to perform heel-to-toe

8

walk or tandem gait (AR 971).  And, even though a part of Defendant's 3.5 page argument highlights a few findings which do show improvement in some of these areas  (See Resp. at 4, citing AR 694, 718, 1078, 1187, 1218 (1-year post-op, exams noted reasonably adequate leg strength, and normal gait); AR 984-84 (consultative examination noting normal strength and gait),  overall the ALJ's discussion on this point is  more or less a neutral recitation of both abnormal and benign findings making it difficult to draw any inferences from it.

Next, the defendant emphasizes that "Plaintiff told the examiner that he ceased working in 2020 because his employer went out of business due to the pandemic, not due to his impairments." Resp. at 4 (emphasis added) (citing AR 27).  But in that portion of the ALJ's decision which Defendant cites, the ALJ simply states "The claimant reported he had stopped working during the pandemic because the business shutdown."  AR 27.  Of significance, it is the Defendant and not the ALJ who added the language "not due to his impairments."  Notwithstanding, the Defendant's point does not undermine Plaintiff's credibility as Plaintiff has alleged a disability onset date of September 14, 2021, and not at the time he left his job in 2020.

Next, the following recitation by the ALJ offers little more in the way of assessing whether Plaintiff experienced improvement following surgery:

> Around 10-11 months after surgery, an August 2022 examination revealed the claimant had decreased lumbar range of motion, functional weakness over both lower limbs in non-myotomel distribution, normal gait, and no assistive devices. (Ex. 4F/5). In November 2022, the claimant saw Dr. Mark Sison, an orthopedist. After examination, Mr. Sison presented his impressions. He stated that the claimant's complained of lower back pain down both posterior thighs, calves and feet associated with intermittent numbness in the calves and feet as well as functional weakness over his legs attributed to knee pain likely due to intervertebral disc disorder of the lumbar spine, lumbar facet cyst, SI joint dysfunction, stenosis with radiculopathy. Further, he reported low back soreness associated with bilateral buttock pain radiating diffusely down both lower limbs all the way to both feet associated with numbness over both buttocks all the way to the toes of both feet as well as functional weakness over both lower limbs likely due to bilaterally lower lumbosacral radiculitis from lumbosacral spondylosis and spinal stenosis. Further, Dr. Sison stated, however, bilateral lower lumbosacral facet/SI joint mediated pain with overlying myofascial pain could not be ruled out. (Ex. 10F/139).

AR 26.

The ALJ continues:

9

> The claimant receives steroid injections and transforaminal injections in his lumbar spine. (Ex. 10F/3, 5, 6, 8, 10, 12). He testified they reduce his pain to 4/10. (Testimony). However, his statements at his appointments, and his work activity contradict his testimony. Further, he continued the conservative steroid and transforaminal injections, which indicates he and his provider believed he had gained some benefit from the prior ones.

AR 26.

To begin, the ALJ provides no examples to illustrate how Plaintiff's "statements at his appointments, and his work activity contradict his testimony." Treatment notes indicate the pain relief lasted only a few weeks, which does not contradict his testimony. See, e.g. AR 1183.

Additionally, a repeat of conservative injections is not necessarily indicative of a positive lasting response. "Repeat steroid injections are a justifiable form of treatment in symptomatic patients with lumbar or cervical disc herniation whose symptoms are not satisfactorily relieved after the first injection."[1]

Finally, the finding of "some benefit" is at best an amorphous statement. Although he reported temporary pain levels reduced to 4 out of 10, this pain reduction does not suggest resolution of the underlying pain inducing pathology. It is also unclear what other non-conservative measures were available to ameliorate Plaintiff's radicular pain. In short, at this juncture the ALJ has not supported the conclusion that Plaintiff's surgery or injections were sufficiently successful to provide lasting pain relief or increased functionality.

The ALJ continues:

> He had a steroid injection in July 2022. (Ex. 10F/111). At the November 2022 examination, Dr. Sison observed that the claimant was able to stand without difficulty and had good balance. He had a non-antalgic gait. He was able toe and heel walk without difficulty. He had moderate tenderness over bilateral lower lumbosacral paraspinal muscles with mild muscle spasms, and moderate tenderness over bilateral SI periarticular regions. He had decreased range of motion in the lumbar spine at flexion, extension, and oblique extension due to pain. He had numbness over both buttocks all the way to the toes of both feet in a non-dermatomal

---

[1] https://boneandjoint.org.uk/Article/10.1302/0301-620X.100B10.BJJ-2018-0461.R1 (last accessed 4/1/2026 (emphasis added).

distribution. On his strength test, he was within functional limits on L2-S1 myotomes of both lower limbs <u>except for functional weakness over both lower limbs</u> in a non-myotome distribution. He had normal reflex testing results in the lower extremities. <u>The straight leg test, slump test, Faber test, and SI joint provocation were equivocally positively bilaterally</u>. The Fortin Finger Test and IROP test were positive bilaterally. (Ex. 10F/138). These tests were signs of some continuing lower extremity radiation and limited range of motion.

AR 26–27 (emphasis added).

Again, this simple recitation of medical findings without more neither supports nor undermines the Plaintiff's subjective symptomology.

The ALJ continues:

The claimant underwent a transforaminal epidural steroid <u>injection in May 2023</u>, with some relief of his symptoms. In June 2023, the claimant saw Dr. Sisson again and reported his pain was 6/10. He reported that <u>the January 2023 injection</u> provided him 40 percent relief of his symptoms for 6 weeks. During that time, he was able to comfortably walk, perform household chores, and cut his grass. (Ex. 10F/103). At this visit, he complained of "significant low back soreness associated with numbness over both buttocks all the way to the toes of both feet as well as functional weakness over both lower limbs likely due to bilateral lower lumbosacral radiculitis from lumbosacral spondylosis and spinal stenosis." The examination revealed the same results as the November 2022 examination. But he reported a higher level of intensity of pain. (Ex. 10F/103). Although he complained of worsening pain, his June 2023 examination was similar to his November 2022 examination. Both examinations were performed months after the <u>July 2022 injection</u>.

AR 27 (emphasis added).

Importantly here, it has not been adequately explained how even a 40% pain reduction sustained for 6 weeks given Plaintiff's subjective complaints is sufficient to conclude that Plaintiff had the RFC to perform light exertional work 5 days a week, 8 hours a day.

## VI.   <u>Conclusion and Recommendation</u>

The ALJ's RFC analysis is insufficient to: 1- reject Plaintiff's general testimony concerning debilitating pain and limitation, 2- substantiate the assertion that Plaintiff's surgery improved his condition, 3- substantiate the implication that steroid injections provided lasting relief, or 4- identify sufficiently substantial evidence supportive of the RFC for a reduced range of light work.

For these reasons, substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled.  Generally, when a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

Accordingly, the recommendation is as follows:

1.    That Plaintiff's motion for summary judgment (Doc. 13) be **GRANTED.**

2.    That Defendant's cross-motion (Doc. 16) be **DENIED.**

3.    That the matter be **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g), consistent with the Court's findings.

4.    That the Court Clerk of Court be directed to enter judgment in favor of Plaintiff and against Defendant Commissioner of Social Security.

**VII.    Objections Due Within 14 Days**

These Findings and Recommendations will be submitted to the U.S. District Judge assigned to the case.  Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **April 6, 2026**             **/s/ Gary S. Austin**
                    UNITED STATES MAGISTRATE JUDGE

12